IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC PHILLIPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14-cv-08138 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| JOHN F. KELLY, Secretary of U.S. ) | |
| Department of Homeland Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eric Phillipson has sued Defendant John F. Kelly, in his official capacity as Secretary of the Department of Homeland Security ("DOHS"), for age discrimination.[1] Phillipson works for the Federal Emergency Management Agency ("FEMA"), which is a division of DOHS. According to Phillipson's First Amended Complaint, DOHS discriminated against him, retaliated against him for his grievance about the discrimination, and subjected him to a hostile work environment. In particular, Phillipson claims that due to his age DOHS wrongfully disciplined him, evaluated his job performance as poor, denied him sick leave, and solicited co-worker complaints about his behavior, all in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Before the Court is Defendant's motion to dismiss several of Phillipson's claims. (Dkt. No. 19.) Phillipson, in turn, has filed a motion seeking leave to file a second amended complaint. (Dkt. No. 28.) For the reasons that follow, the Court grants Defendant's motion to dismiss in part and denies it in part, and also grants Phillipson's motion for leave to file a second amended complaint.

---

[1] Phillipson's complaint names as the defendant Jeh Charles Johnson, who was Secretary of DOHS at the time. John F. Kelly is now Secretary of DOHS. Pursuant to Federal Rule of Civil Procedure 25(d), Kelly is properly substituted for Johnson as the defendant in this suit.

# BACKGROUND

Phillipson is a 49-year-old program analyst for FEMA. (First Am. Compl. ¶ 7, Dkt. No. 18.) He is a member of the bargaining unit subject to FEMA's collective bargaining agreement ("CBA") with the American Federation of Government Employees ("AFGE"). (*Id.* ¶ 8.) In his First Amended Complaint, Phillipson describes the following eight discriminatory or retaliatory incidents that he has suffered while working for FEMA. (*Id.* ¶ 11.)[2]

> *Incident A:* On March 18, 2013, Phillipson's supervisor, Operational Plans Section Chief Gustav Wulfkuhle, wrote an official reprimand intended for Phillipson's personnel folder. (*Id.* ¶ 11(a); *see also* Grievance Filing (Apr. 24, 2013) at 1, Ex. 2 of Dkt. No. 20-1 at 69 of 135.) According to the letter, Phillipson was counseled in October 2012 "concerning [his] manner of dealing with Denise Dukes," which was characterized as "aggressive," "belligerent," "unacceptable," and constituting "misconduct." But Phillipson alleges that "there was no such counseling in October of 2012." (Grievance Filing (Apr. 24, 2013) at 1, Ex. 2 of Dkt. No. 20-1 at 69 of 135.)
>
> *Incident B:* On April 5, 2013, Wulfkuhle wrote an Official Notice of Proposed Suspension. (First Am. Compl. ¶ 11(b), Dkt. No. 18.) That Notice charged that Phillipson had been "60 days past due on [his] government issued travel card" as of April 9, 2012. (Grievance Filing (Apr. 24, 2013) at 1, Ex. 2 of Dkt. No. 20-1 at 69 of 135.) Phillipson denies that this was true. (*Id.*)
>
> *Incident C:* On April 15, 2013, Wulfkuhle evaluated Phillipson's performance in four job categories as "Less Than Expected" ("LTE") because Phillipson failed to complete an

---

[2] Phillipson labels the eight alleged discriminatory or retaliatory incidents with the letters A–H and Defendant has adopted that convention in the briefing. For ease of reference, this Court does the same. In addition, for purposes of this discussion, the factual allegations in the First Amended Complaint regarding the eight incidents have been supplemented with information from Phillipson's grievance filing and an Equal Employment Opportunity Commission ("EEOC") Counselor's report documenting his informal EEOC complaint. Although Phillipson did not attach these documents to his First Amended Complaint, Phillipson references the grievance filing and the "informal EEO complaint" in the First Amended Complaint, (*see* First Am. Compl. ¶¶ 23, 33, Dkt. No. 18). The Court adds relevant facts from these documents for exposition and may consider these facts in ruling on Defendant's motion to dismiss. *Meer v. Graham*, 524 F. Supp. 2d 1044, 1048 (N.D. Ill. 2007) (ruling that district court may consider documents attached to defendant's 12(b)(6) motion to dismiss that are referenced in complaint and central to plaintiff's claims (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 828 (7th Cir. 2013) (stating that district court may look beyond the allegations of the complaint at submitted evidence in relation to defendant's 12(b)(1) motion to dismiss).

Individual Development Plan ("IDP"). Phillipson alleges that he had completed that IDP. (First Am. Compl. ¶ 11(c), Dkt. No. 18; *see also* Grievance Filing (Apr. 24, 2013) at 2, Ex. 2 of Dkt. No. 20-1 at 69 of 135.)[3] After Phillipson received notice that DOHS proposed to suspend him, Phillipson or his union submitted a response. (First Am. Compl. ¶ 13, Dkt. No. 18.)

*Incident D:* On June 21, 2013, Phillipson felt ill at about 9 a.m. and requested sick leave. After six hours passed without Wulfkuhle's response, Phillipson notified the only supervisor present in the office that he intended to leave and then did so. Five days later, Wulfkuhle instructed Phillipson to carry the sick leave time used as away without leave. (*Id.* ¶ 11(d); EEO Counselor's Rpt. at 4 (Aug. 22, 2013), Ex. 9 of Dkt. No. 20-1 at 120 of 135.)

*Incident E:* On July 8, 2013, Phillipson learned that FEMA leadership had directed its Regional Security Officer to call Phillipson's coworkers to ask if he had been "hostile" towards them. (First Am. Compl. ¶ 11(e), Dkt. No. 18; *see also* EEO Counselor's Rpt. at 2 (Aug. 22, 2013), Ex. 9 of Dkt. No. 20-1 at 120 of 135.)

*Incident F:* On September 6, 2013, Wulfkuhle again issued Phillipson a Performance Expectation Letter citing his performance as LTE. (First Am. Compl. ¶ 11(f), Dkt. No. 18.)

*Incident G:* On September 11, 2013, Wulfkhule attempted to deliver Phillipson's Second Quarter Performance Evaluation to him with ratings of LTE in several areas. (*Id.* ¶ 11(g).)

*Incident H:* Finally, On September 24, 2013, Wulfkhule denied Phillipson's request for sick leave. (*Id.* ¶ 11(h).)

On April 24, 2013, in response to Incidents A, B, and C, Phillipson sent a letter to Paul Preusse, the Director of FEMA's Response Division, to provide "official notice" that he desired to file a grievance against Wulkuhle because of "a series of incidents that have occurred between January 28th and April 24th, 2013." (Grievance Filing (Apr. 24, 2013) at 1, Ex. 2 of Dkt. No. 20-1 at 69 of 135.) The grievance letter complains that Wulfkuhle made false official statements about Phillipson as described in Incidents A and B above, and that Wulfkuhle subjected Phillipson to disparate treatment on account of his age at various times, such as in Incident C.

---

[3] According to Wulfkuhle's response to the EEO Counselor's inquiry, Wulfkuhle "initially rated Mr. Phillipson's performance in the critical areas of 'Completing Tasks,' and 'Quality of Work,' and in the areas of 'Coordination,' and 'Team Work' with a 'Less than Expected' (LTE) rating for the second quarter." (EEO Counselor's Rpt. at 10 (Aug. 22, 2013), Ex. 9 of Dkt. No. 20-1 at 120 of 135.)

3

Defendant has moved to dismiss Phillipson's claims based on Incidents A, B, and C for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendant also has moved to dismiss the claims arising out of Incidents E, F, and G for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] Notably, Defendant has not moved to dismiss Phillipson's claims based on Incidents D or H, which concern the alleged denials of sick leave.

## DISCUSSION

**I.      Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

Defendant argues that, because Phillipson's April 24, 2013 grievance letter complained about his age discrimination claims arising out of Incidents A, B, and C pursuant to the CBA, this Court lacks subject-matter jurisdiction over any age discrimination claims arising out of those incidents.

This Court has federal question jurisdiction over age-discrimination claims brought under the ADEA. *See* 28 U.S.C. § 1331. But employees in certain bargaining units are entitled to relief from age discrimination pursuant to not only the ADEA but also grievance procedures negotiated and included in a CBA. Such employees may "raise the matter [either] under a statutory procedure or the negotiated procedure, **but not both**." 5 U.S.C. § 7121(d) (emphasis added). Such an employee "shall be deemed to have . . . raised the matter under . . . the negotiated procedure . . . at such time as the employee . . . timely files" a written grievance in accordance with the parties' negotiated procedure. *Id.* In the present case, Defendant argues that Phillipson is such an employee and, when he filed his grievance letter on April 24, 2013, he elected to raise

---

[4] Defendant also moved to dismiss claims arising out of Incidents A, B, and C as time-barred and otherwise failing to state a claim. Because this Court finds that it does not have subject-matter jurisdiction over those claims, it does not consider the alternative arguments here.

4

the matter under the CBA rather than the ADEA. Phillipson responds by arguing that he grieved not pursuant to the CBA's procedure but instead pursuant to a separate administrative procedure.

As a general rule, a district court reviewing a Rule 12(b)(6) motion to dismiss must "accept well-pled factual allegations as true and draw all reasonable inferences in the plaintiffs' favor." *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 625 (7th Cir. 2001). But when a defendant contends "that there is *in fact* no subject matter jurisdiction," *Apex Digital v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009), the Court is "not bound to accept as true the allegations of the complaint which tend to establish jurisdiction. Instead, [it] may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue . . . ." *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 828 (7th Cir. 2013) (internal quotation marks and citation omitted). In this case, the evidence submitted on the jurisdictional issue includes the FEMA manual explaining the administrative grievance procedure, AFGE's CBA, and Phillipson's grievance letter.

Phillipson claims that he tried to file his grievance letter through what the FEMA Manual describes as "the Administrative Grievance System." (Ex. 3 to Pl.'s Memo. in Opp. to Def.'s Mot. to Dismiss, FEMA Manual 3300.1 (Sep. 29, 1992) at 1-1 ¶ 1-1, Dkt. No. 21-3.) But "[w]hen there is a grievance system in effect which has been negotiated with a labor organization, an employee who is a part of the bargaining unit must use the negotiated grievance system," and not the administrative system, because "[t]he provisions of the Agency's Administrative Grievance System do not apply to . . . [a]ny issue covered by a Negotiated Grievance Procedure contained in an agreement with an exclusively recognized labor

5

organization, when the grievant is included within the coverage of the agreement . . . ." (*Id.* at 5-1 ¶ 5-4, 2-2 ¶ 2-2(b)(14).) [5]

A grievance system that had been negotiated with a labor union was in effect at the time Phillipson sent the April 24, 2013 letter. AFGE's CBA provides a procedure through which covered employees may grieve "[a]ny matter involving the interpretation and application of the Employer's policies, regulations, and practices related to conditions of employment . . . ." (CBA at art. 27 § 6(B), Dkt. No. 20-1.) Phillipson's grievance letter alleges "disparate treatment *in the terms and conditions of my employment*." (Grievance Filing (Apr. 24, 2013) at 1, Ex. 2 of Dkt. No. 20-1 at 69 of 135.) This complaint in the grievance letter plainly involves the interpretation and application of FEMA's policies, regulations, and practices related to the conditions of his employment. That subject matter is covered by the CBA and so, under the terms of the CBA and his own grievance letter, only the negotiated system—and not the administrative procedure—was available to Phillipson.

Phillipson argues that he "was attempting to file his grievance under [the administrative] process" and therefore "did not file a grievance under the union-negotiated grievance procedure." (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss at 5, Dkt. No. 21.) The Court disagrees. Phillipson primarily argues that had he been "pursuing his grievance under the CBA, he would have had to initiate the grievance by addressing it to his immediate supervisor, not a director." (*Id.* at 7.) But the fact that Phillipson addressed the letter to his director rather than his

---

[5] *See also* Ex. 3 to Pl.'s Memo. in Opp. to Def.'s Mot. to Dismiss, FEMA Manual 3300.1 (Sep. 29, 1992) 1-1 ¶ 1-2(a), Dkt. No. 21-3 (observing that "[t]he provisions of this Administrative Grievance System may be preempted by a negotiated grievance procedure for employees within the bargaining unit"). In addition, although "[t]he provisions of the Agency's Administrative Grievance System apply to any issue of employee concern . . . which is subject to the control of FEMA management, or any matter in which an employee alleges that . . . retaliation has been practiced," it does not apply to "[a] performance evaluation given under FEMA's performance appraisal system," such as Incidents A and C, or to "[p]reliminary warning or notice," such as Incident B. (*Id.* at 2-1 ¶ 2-2(a); 2-2 ¶ 2-2(b)(7); 2-2 ¶ 2-2(b)(11).)

immediate supervisor amounts either to a mistaken address or a deliberate attempt to appear to use a procedure to which he was not entitled. In either case, it does not suffice to remove Phillipson's grievance from the purview of the CBA's grievance procedure. Phillipson attempted to avail himself of the grievance process available to him and the only grievance procedure available to Phillipson was the negotiated system. Thus, when Phillipson filed a grievance, that grievance had to be under the negotiated system in practice, even if not in Phillipson's mind.

Phillipson's grievance covered issues identical to those that he has now raised before this Court in Incidents A, B, and C. As Congress has determined that federal employees who have adjudicated such claims under a negotiated procedure may not use the federal courts to re-litigate them, this Court grants Defendant's motion to dismiss Phillipson's complaint for lack of jurisdiction to the extent his claims depend on Incidents A, B, and C. Those claims are dismissed with prejudice.

## II. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Defendant moves to dismiss Phillipson's claims based on Incidents E, F, and G for failure to state a claim. A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (plausibility requirement "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations" (quoting *Twombly*, 550 U.S. at 556)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not satisfy this standard. *Aschroft v. Iqbal*, 556 U.S. 662, 678

7

(2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). When analyzing a complaint for whether it states a claim, the Court "must construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826–27 (7th Cir. 2014) (internal citations omitted).

Acknowledging that a complaint must contain "something more than a general recitation of the elements of the claim," the Seventh Circuit has held that the "pleading standard for simple claims of [employment] discrimination [is] minimal." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "[L]ittle information is required to put [an] employer on notice of" claims of employment discrimination because employers "are familiar with discrimination claims and know how to investigate them . . . ." *Carlson*, 758 F.3d at 827 (citing *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781–82 (7th Cir. 2007)).

A. **Phillipson's Discrimination Claims**

To establish an ADEA violation, a plaintiff must first show that he suffered an adverse employment action. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). "For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) (concerning claims under Title VII). Then the plaintiff must demonstrate that age played a role in the employer's decision-making process in levying that adverse employment action and that it had a determinative influence on the outcome. *Van* Antwerp, 627 F.3d at 297; *Cole v. Ill. Tool Works, Inc.*, 924 F. Supp. 2d 978, 987 (N.D. Ill. 2013). However, at the pleading

8

stage, to survive a motion to dismiss under Rule 12(b)(6), a complaint "merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Tamayo*, 526 F.3d at 1085.

Phillipson alleges that FEMA incorrectly rated his performance as poor and solicited his coworkers to lodge complaints of hostility. Based on these allegations, in the light most favor to Phillipson, one could reasonably conclude that DOHS's actions substantially worsened Phillipson's conditions of employment, and thus the First Amended Complaint plausibly alleges that Phillipson suffered an adverse employment action. Moreover, Phillipson's First Amended Complaint further alleges the type of discrimination that occurred (age), by whom (FEMA generally and Wulfkhule in particular), and when (in July and September 2013, while he was employed at FEMA). These factual allegations are sufficient to put Defendant on notice of Phillipson's claim, and thus Phillipson's age discrimination claims pass Rule 8 muster. *See Vindel v. Medline Indus., Inc.*, 2010 WL 4625478, at *4 (N.D. Ill. Nov. 4, 2010) (ruling that such detail sufficed to satisfy pleading standards).

### B. Phillipson's Retaliation Claims

Phillipson claims that Incidents E, F, and G constituted retaliation for his filing of a grievance against Wulfkhule. To state a retaliation claim, a plaintiff must allege that he engaged in a protected action and that he suffered an adverse action as a result. *Silk v. Bd. of Trustees, Moraine Valley C.C., Dist. No. 524*, 795 F.3d 698, 710 (7th Cir. 2015). Filing a grievance is a protected activity. And an action is "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Lapka v. Chertoff*, 517 F.3d 974, 985–86 (7th Cir. 2008); *see also Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (collecting cases). The Court cannot say that, as a matter of law, the

actions about which Phillipson complains in Incidents E, F, and G would not have dissuaded a reasonable worker from grieving alleged discrimination. That question is for a fact-finder to decide, especially because in determining whether an action is adverse, "[c]ontext matters." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2009). And for similar reasons as discussed above, Phillipson's complaint provides sufficient facts to plausibly allege these actions were taken because he filed a grievance against Wulfkhule.

### C. Phillipson's Hostile Work Environment Claim

Phillipson does not set forth an independent hostile work environment claim, but he does allege that he was "subjected . . . to a hostile environment." (First Am. Compl. ¶ 8, Dkt. No. 18.) Insofar as Phillipson is asserting an independent hostile work environment claim, the Court finds that this claim must be dismissed without prejudice. A work environment is hostile if it subjects an employee to harassment "so severe and pervasive as to alter the conditions of the victim's employment and [to] create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (internal citations and quotation marks omitted).

The Court notes that the Seventh Circuit has assumed without deciding that plaintiffs may bring a claim of a hostile work environment under the ADEA. *See, e.g.*, *Racicot v. Wal–Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005); *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001). Here, the Court need not determine whether Phillipson can bring a hostile work environment claim under the ADEA because, even if he can, the allegations in his First Amended Complaint fail to meet the pleading standard for such a claim.

A plaintiff making a hostile work environment claim must plausibly allege that his work environment was offensive both objective and subjectively; the harassment was based on the employee's membership in a protected class; the conduct was severe or pervasive; and that there

is a basis for employer liability. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009) (discussing elements necessary to prove for hostile work environment claim under Title VII); *Silic v. BBS Trucking, Inc.*, 2013 WL 942207, at *3–4 (N.D. Ill. Mar. 11, 2013) (applying *Scruggs* to the ADEA context). Phillipson has alleged that his work environment was subjectively hostile, that he was harassed because of his age, and that Defendant is liable. The remaining elements are whether Phillipson has plausibly alleged that the environment was objectively offensive and that the conduct was severe or pervasive—two elements that run together. A work environment is objectively offensive if a reasonable person would find the environment hostile. *See King v. Acosta Sales and Mktg., Inc.*, 678 F.3d 470, 472 (7th Cir. 2012) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To determine objective hostility, this Court must consider "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's work performance." *Harris*, 510 U.S. at 21; *see also Silk v. City of Chicago*, 194 F.3d 788, 804 (7th Cir. 1999) (quoting *Harris*, 510 U.S. at 21)).

Phillipson recounts three allegedly discriminatory actions over the course of a couple of months, none of which were, as an objective matter, physically threatening or humiliating. Even assuming that those allegations are true, the Court cannot plausibly infer from this objective hostility or severity or pervasiveness sufficient to sustain such a claim for hostile work environment. As a result, insofar as Phillipson is asserting a hostile work environment claim, this claim is dismissed without prejudice.

**III.    Phillipson's Motion for Leave to File Second Amended Complaint**

The proposed second amended complaint alleged four more retaliatory actions that "created a retaliatory work environment." (Pl.'s Second Am. Compl. at 6, Dkt. No. 28-1.)[6] Those actions include a wrongfully-issued suspension letter, a request to invalidate Phillipson's time card, a false accusation of failure to complete edits concerning a document that Phillipson had written, and rejection of requests for travel reimbursement. (*Id.*) Because the Court should "give plaintiffs a chance to amend a complaint to provide more factual detail," *Olso v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015), the Court grants Phillipson's motion for leave to file a second amended complaint. Phillipson may submit the proposed second amended complaint attached to his motion; however, Phillipson may find it beneficial to submit a revised second amended complaint that takes into account the Court's ruling herein. The Court will allow time for Phillipson to choose which option to pursue.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 19) is granted in part and denied in part. Specifically, the Court grants Defendant's motion to dismiss Phillipson's claims insofar as they are dependent on Incidents A, B, and C; those claims are dismissed with prejudice for lack of subject-matter jurisdiction. The Court also grants Defendant's motion to dismiss Phillipson's hostile work environment claim for failure to state a claim; that claim is dismissed without prejudice. The Court denies Defendant's motion to dismiss Phillipson's discrimination and retaliation claims. Finally, the Court grants Phillipson's motion for leave to file a second amended complaint. (Dkt. No. 28.) As Phillipson now has the benefit of the Court's

---

[6] Although Phillipson titled the proposed complaint that he most recently sought leave to file "First Amended Complaint" (Dkt. No. 28-1), the Court construes that proposed complaint as the proposed second amended complaint, in accord with his Motion for Leave to File Second Amended Complaint (Dkt. No. 28).

ruling, hemay submit the proposed second amended complaint attached to his motion or he may file a revised version. In either case, Phillipson has 14 days to complete his submission.

ENTERED:

Dated: March 24, 2017

Andrea R. Wood
United States District Judge